[653 NYS2d 950]

Thomas Humbach, Plaintiff, v Arlene J. Goldstein et al., Respondents, et al., Defendants. Oxford Health Plans, Inc., Nonparty Appellant.

Second Department, February 24, 1997

### APPEARANCES OF COUNSEL

*Brown Raysman & Millstein, L. L. P.,* New York City *(Catherine M. McGrath* and *Nanette C. Heide* of counsel), for nonparty appellant.

*Thurm & Heller,* New York City *(John T. O'Dwyer* of counsel), for respondents.

### OPINION OF THE COURT

GOLDSTEIN, J.

At issue here is whether the appellant Oxford Health Plans, Inc. (hereinafter Oxford), the plaintiff's health insurance carrier, should be permitted to intervene as a coplaintiff in the plaintiff's action to recover damages for personal injuries resulting from his fall down an elevator shaft on November 13, 1992. Oxford alleges that as a result of the accident, the plaintiff filed a claim with it for approximately $83,000 in medical bills, which was duly paid by Oxford.

In 1994 the plaintiff commenced the instant action to recover $10,000,000 in damages against the corporation which allegedly performed maintenance work on the elevator, and the owners and managing agent of the building where the elevator was located. In June 1995 Oxford moved for leave to intervene as a coplaintiff in that action as a matter of right pursuant to CPLR 1012, or, in the alternative, as a matter of discretion pursuant to CPLR 1013. In its proposed verified complaint, Oxford claimed it is (1) "subrogated to the plaintiff's right to recover medical expenses paid from responsible third parties", and (2) "entitled to reimbursement to the extent of the benefit payments made to plaintiff pursuant to contract with the plaintiffs". The Oxford contract with the plaintiff provided, in pertinent part: "Upon providing care for such injury or sickness pursuant to the terms of this agreement [Oxford] shall be permitted to recover the reasonable value of such care for injury or sickness, when payment is made directly to the Member in third party settlements or satisfied judgments. The right of such recovery will only be exercised by [Oxford] when the amount the Member received through a third party settle-

ment or satisfied judgment is specifically identified as amounts paid for health care services or benefits and only to the extent of the care provided for such injury or sickness".

The plaintiff, in "qualified opposition" noted that (1) Oxford had a lien which could be adequately protected by means other than intervention, and (2) if intervention were permitted, an additional medical services provider, Westchester Orthopedic Associates, which claimed that its fees were not paid by Oxford, should also be permitted to intervene. The defendants also opposed the motion, contending that they would be prejudiced if they were "required to try * * * insurance coverage issues before the same jury as the main action". The court denied Oxford's motion for intervention stating that Oxford's "rights are adequately protected by operation of law".

On appeal, Oxford relies upon *Teichman v Community Hosp.* (87 NY2d 514), which held that the trial court did not abuse its discretion when it granted a health insurance carrier leave to intervene in a medical malpractice action which had already proceeded to settlement by stipulation. That decision involved the test for permissive intervention pursuant to CPLR 1013 *(see, Teichman v Community Hosp., supra,* at 522). CPLR 1013 provides in pertinent part: "Upon timely motion, any person may be permitted to intervene in any action * * * when the person's claim or defense and the main action have a common question of law or fact. In exercising its discretion, the court shall consider whether the intervention will unduly delay the determination of the action or prejudice the substantial rights of any party".

In *Teichman v Community Hosp. (supra),* the health insurance policy contained a provision authorizing recovery by the insurance carrier of a refund from the insured for all expenses for which the insured was compensated from another source. In that case, the Court of Appeals held that the carrier's claim rested "on its right of reimbursement under the insurance contract" *(Teichman v Community Hosp., supra,* at 522).

Oxford's insurance policy limits its right to recovery from third parties to amounts paid to the insured through settlements or satisfied judgments which specifically identify the amounts paid for health care services. Therefore, the assertion in Oxford's proposed verified complaint that a cause of action exists based on the contract is at this time premature. Oxford must therefore rely on principles of equitable subrogation.

Pursuant to principles of equitable subrogation, an "insurer, having paid losses of its insured, is placed in the position of its

insured" *(Winkelmann v Excelsior Ins. Co.,* 85 NY2d 577, 581). That right arises once the insurance carrier makes payment on behalf of its insured *(see, Teichman v Community Hosp., supra,* at 521). However, the carrier, as subrogee, stands in the shoes of the policyholder *(see, United States Fid. & Guar. Co. v Smith Co.,* 46 NY2d 498, 504). As the Court of Appeals noted in *Federal Ins. Co. v Andersen & Co.* (75 NY2d 366, 372): "The rights of an insurer as equitable subrogee against a third party are derivative and limited to such rights as the insured 'would have had against such third party for its default or wrongdoing'. *(Ocean Acc. & Guar. Corp. v Hooker Electrochemical Corp.* [240 NY 37], at 47.) Thus, the insurer can only recover if the insured could have recovered and its claim as subrogee is subject to whatever defenses the third party might have asserted against its insured".

Pursuant to CPLR 4545 (c), if this case were to proceed to a verdict in the plaintiff's favor, the court would be required to reduce the amount of the award attributable to "the cost of medical care, dental care, custodial care or rehabilitation services, loss of earnings or other economic loss * * * replaced or indemnified, in whole or in part, from any collateral source such as insurance". CPLR 4545 applies to only certain types of damages (CPLR 4545 [c]; *see, Oden v Chemung County Indus. Dev. Agency,* 87 NY2d 81; *see also, Kelly v Seager,* 163 AD2d 877), and, as the Court of Appeals noted in *Teichman v Community Hosp. (supra,* at 522-523), it does not apply to "pretrial settlements". The Court of Appeals has not ruled on the effect of CPLR 4545 on the issues before us, which involve the preverdict stage. However, since Oxford paid the plaintiff's medical costs, CPLR 4545 would be applicable to any verdict in the instant action. Oxford could not recover, by verdict after trial, the cost of the plaintiff's medical care which was reimbursed by Oxford, without running afoul of the rule that Oxford's rights of recovery under subrogation cannot be any more than the plaintiff's rights of recovery, or without running afoul of CPLR 4545.

The purpose of CPLR 4545 is not only to prevent double recovery by plaintiffs, but also to keep down the liability insurance costs of policyholders. The predecessor to this provision, CPLR former 4010, was enacted to reduce the premiums of potential defendants in medical malpractice cases *(see,* Governor's Approval Mem, 1981 NY Legis Ann, at 154-155; Mem of Assemblyman Tallon, 1981 NY Legis Ann, at 153-154; Alexander, Practice Commentaries, McKinney's Cons Laws of

NY, Book 7B, CPLR C4545:1, at 344-345). It was later extended to cover other tort actions, to reduce the cost of liability insurance of alleged tortfeasors (see, Governor's Program Mem, 1986 NY Legis Ann, at 133, 136; Mem of State Exec Dept in support of L 1986, ch 220, 1986 McKinney's Session Laws of NY, at 2856, 2860). The question of whether the defendants' liability insurance carriers should be held ultimately responsible for all of the plaintiff's damages, even for damages specified in CPLR 4545 which have been compensated from collateral sources, is a question best left to the Legislature, and not to the courts.

The intervention of various medical providers could create an adversarial posture between carriers and plaintiffs, and could unduly delay the determination of such actions. If we follow Oxford's logic, all insurance carriers who paid benefits to the plaintiff relating to the plaintiff's injuries, including health insurance carriers, disability insurance carriers, and no-fault carriers, could intervene. In addition, anyone who provided services to the plaintiff relating to the plaintiff's injuries and remained unpaid could also intervene, and assert cross claims against the insurance carriers if those services were arguably covered by insurance. Simple personal injury actions would be transformed into complicated, unmanageable, multiparty litigation.

Further, the submission of issues to the jury relating to the plaintiff's compensation from collateral sources could prejudice the plaintiff's case by permitting the jury to speculate that the plaintiff already has been compensated, so the "case should not be seriously regarded" (Posnick v Crystal, 181 App Div 660, 662; see, Zimber v Kress, 225 App Div 16; Regan v Frontier El. & Mill Co., 211 App Div 164; see also, Smith v Majestic Iron Works, 2 NY2d 544).

These concerns did not arise in Teichman v Community Hosp. (supra) because in that case, intervention was not sought until after the parties entered into a stipulation of settlement.

Oxford has, by contract, limited its right of recovery from any settlement in the plaintiff's favor to the portion of any payment made which is "specifically identified" as payment for health care services. Moreover, Oxford has not reserved to itself any right to veto a proposed settlement between the plaintiff and the defendants. Thus, at this juncture, Oxford has no rights to protect in the instant action, and the causes of action pleaded in its proposed amended complaint are asserted prematurely.

If a settlement is reached, and payments are made, unlike in Teichman v Community Hosp. (supra), the plaintiff has

acknowledged that Oxford would have a lien on any payments from third parties which are specifically identified as amounts paid for health care services or benefits attributable to the plaintiff's injuries in the accident *(see, Rosario-Paolo, Inc. v C & M Pizza Rest.,* 84 NY2d 379; *Datlof v Turetsky,* 111 AD2d 364, 365; *cf., Teichman v Community Hosp., supra).* Oxford could protect any rights it might have by seeking legal redress at that juncture.

In view of the foregoing, the Supreme Court did not abuse or improvidently exercise its discretion in denying Oxford leave to intervene.

Accordingly, the order appealed from is affirmed, with costs to the defendants-respondents Arlene Joyce Goldstein, 40 Barker Avenue Company, Mikedam Realty Corp., and Samson Management Corp.

BRACKEN, J. P., and THOMPSON, J., concur with GOLDSTEIN, J.; McGINITY, J., concurs in the result only.

Ordered that the order is affirmed, with costs to the defendants-respondents.