*586 OPINION OF THE COURT
Edward H. Lehner, J.
The issues raised on the motion of Oxford Health Plans, Inc. (Oxford) to intervene in this personal injury action are whether it, as plaintiffs health insurer, has a viable claim against the alleged tortfeasors and, if so, whether that claim should be adjudicated in this litigation.
Here plaintiff Janice Nossoughi alleges that she was injured when she tripped and fell in defendants’ department store. Oxford paid $12,413.23 for her hospital and medical expenses and has now moved to intervene as a party plaintiff pursuant to CPLR 1012, or in the alternative, pursuant to CPLR 1013, to obtain reimbursement from defendants.
The health insurance policy issued by Oxford to plaintiffs contains the following provision: “Upon providing care for such injury or sickness pursuant to the terms of this agreement, Health Plan shall be permitted to recover the reasonable value of such care for injury or sickness, when payment is made directly to the Member in third party settlements or satisfied judgments. The right to such recovery will only be exercised by Health Plan when the amount the Member received through a third party settlement or satisfied judgment is specifically identified as amounts paid for health care services and only to the extent of the care provided for such injury or sickness.” Oxford does not argue that its policy creates a lien for repayment nor that it has a contractual right to subrogation. Rather it asserts an equitable right to subrogation.
Plaintiffs and defendants oppose the application, primarily on the ground that since Oxford, under principles of subrogation, “stands in the shoes of the policyholder”, it cannot sustain a recovery because under CPLR 4545 (c) plaintiff could not recover for any medical expenses from the tortfeasor as she has received a “collateral source” reimbursement therefor from Oxford.
DISCUSSION
CPLR 1012 (a) (2) provides for intervention as of right “when the representation of the person’s interest by the parties is or may be inadequate and the person is or may be bound by the judgment”, while CPLR 1013 provides for discretionary intervention where there is “a common question of law or fact”. In the exercise of such discretion “the court shall consider whether the intervention will unduly delay the determination *587 of the action or prejudice the substantial rights of any party” (CPLR 1013).
The general principles of equitable subrogation with respect to insurance carriers were summarized as follows in Winkelmann v Excelsior Ins. Co. (85 NY2d 577, 581 [1995]): “Subrogation is the principle by which an insurer, having paid losses of its insured, is placed in the position of its insured so that it may recover from the third party legally responsible for the loss * * * The principle has a dual objective. It seeks, first, to prevent the insured from recovering twice for one harm, as it might if it could recover from both the insurer and from a third person who caused the harm, and, second, to require the party who has caused the damage to reimburse the insurer for the payment the insurer has made * * * The doctrine is liberally applied for the protection of those who are its natural beneficiaries—insurers that have been compelled by contract to pay the loss caused by the negligence of another”.
The few cases that have discussed the right of health insurers to intervene in tort actions, and the effect of CPLR 4545 on subrogation rights, have come to contrary positions.
In Kelly v Seager (163 AD2d 877 [1990]), the Fourth Department concluded that the “collateral source rule set forth in CPLR 4545 (c) does not apply to subrogation actions seeking to recover moneys paid by an insurer on a fire loss [as] [t]he purpose of the statutory collateral source rule is to prevent multiple recoveries for the same loss by an injured party * * * [and] [t]hat purpose would not be served by its application to subrogation claims”.
In Teichman v Community Hosp. (87 NY2d 514 [1996]), the Court of Appeals had before it an application by Metropolitan Life Insurance Company (MetLife) to intervene in an infant’s compromise to assert a claim against the settlement for medical expenses which it had paid as a result of the injuries sustained by the infant. The plaintiffs opposed the application on the grounds that they had not sought recovery for past medical expenses. Finding that although the MetLife contract did not create a lien nor provide for contractual subrogation, the Court ruled that the insurer was nevertheless entitled to intervene “to establish its contractual right to reimbursement of any medical expenses actually included in the settlement” (at 518). That the settlement did not specifically include payment for past medical expenses was not determinative, the crucial issue being whether “MetLife’s claim for a refund could be adversely affected if intervention were not allowed” (at 522). *588 The Court rejected the argument referred to above regarding the effect of CPLR 4545, ruling that “nothing in the rules governing settlement of an infant’s claim indicates that such settlements must be reduced by collateral source payments”, noting that “here there exists the possibility that the settlement did actually include some payment for medical expenses” (at 523).
Crucial to the policy question raised by the instant controversy, the Court in Teichman concluded (supra, at 523): “Allowing MetLife to seek a refund of any medical expense payments included in the settlement both prevents a potential double recovery by plaintiffs and assures that tortfeasors, not ratepayers, will ultimately bear the expense.” (Emphasis supplied.)
While in Teichman (supra) the Court authorized intervention, it was not presented with a fact pattern where such request was made in a pending action in the pretrial stage. Such an application was before the Second Department in Humbach v Goldstein (229 AD2d 64 [1997]). There the insurer seeking intervention was the movant herein and the policy contained the exact same provision as is quoted above. The Court, noting that the Teichman case did not resolve the effect of CPLR 4545 at the preverdict stage, ruled that said section “would be applicable to any verdict in the instant action” and that hence “Oxford could not recover, by verdict after trial, the cost of the plaintiff’s medical care which was reimbursed by Oxford, without running afoul of the rule that Oxford’s rights of recovery under subrogation cannot be any more than the plaintiff’s rights of recovery, or without running afoul of CPLR 4545” (at 67). As a policy reason to reject intervention, it was stated (at 68): “The intervention of various medical providers could create an adversarial posture between carriers and plaintiffs, and could unduly delay the determination of such actions. If we follow Oxford’s logic, all insurance carriers who paid benefits to the plaintiff relating to the plaintiff’s injuries, including health insurance carriers, disability insurance carriers, and no-fault carriers, could intervene. In addition, anyone who provided services to the plaintiff relating to the plaintiff’s injuries and remained unpaid could also intervene, and assert cross claims against the insurance carriers if those services were arguably covered by insurance. Simple personal injury actions would be transformed into complicated, unmanageable, multiparty litigation.”
The Court concluded that since Oxford “has not reserved to itself any right to veto a proposed settlement between the *589 plaintiff and the defendants”, and it “has no rights to protect”, its claim to intervene was “asserted prematurely” (Humbach v Goldstein, supra, at 68). The reference to prematurity appears to relate to plaintiff’s acknowledgement that “Oxford would have a lien on any payments from third parties which are specifically identified as amounts paid for health care services or benefits attributable to the plaintiff’s injuries in the accident” (at 69).
The Second Department followed the aforesaid holding in the subsequent case of McGuire v Long Is. Jewish-Hillside Med. Ctr. (237 AD2d 417 [1997]).
In the most recent reported decision in this area (Berry v St. Peter’s Hosp., 173 Misc 2d 214 [Sup Ct, Albany County 1997]), Justice Harris concluded that unless the Second Department was intending to distinguish Teichman (supra) on the grounds that the plaintiff in Humbach (supra) admitted the existence of a lien, its decision “creates an irreconcilable and impermissible detour from the holding of the Court of Appeals in Teichman” (at 223). In Berry, the parties who had paid more than $3,500,000 in medical expenses relating to injuries sustained as a result of defendant’s alleged malpractice were allowed to intervene, the court finding that CPLR 4545 would not bar recovery because the “moneys received for medical expenses in the verdict are immediately payable to the party with subrogation rights, completely offsetting the collateral source received by plaintiff prior to trial” (at 221).
At common law an injured party was entitled to recover medical expenses both from his own health insurer as well as from the tortfeasor on the concept that such party paid premiums for the extra protection. Since the principle purpose of CPLR 4545 was to modify the common-law collateral source rule so as to prohibit a double recovery, permitting the health insurer to recover its out-of-pocket expenses from the tortfeasor’s insurer does not violate such intent as the claims of the subrogee are separate and distinct from those of the subrogor, being “divisible and independent” (Winkelmann v Excelsior Ins. Co., 85 NY2d, supra, at 582).
While the intent of the Legislature in enacting the several provisions of CPLR 4545 (first in malpractice cases and then in other tort litigation) was also to reduce the costs of liability insurance, it cannot be said that its intent was to do so at the expense of health insurers. This view was implicitly expressed by the Court of Appeals in Teichman where it authorized intervention by MetLife so that “tortfeasors, not ratepayers, *590 will ultimately bear the expense” of medical costs (87 NY2d, supra, at 523).
Moreover, since CPLR 4545 may be considered in derogation of common-law principles, it should receive a strict interpretation so as to limit the change in common law only to the clear meaning of the words used (Matter of Toys “R” Us v Silva, 89 NY2d 411, 421 [1996]; Iannotti v Consolidated Rail Corp., 74 NY2d 39, 46 [1989]; McKinney’s Cons Laws of NY, Book 1, Statutes § 301).
Having concluded that Oxford’s claim is not barred by CPLR 4545, the next issue presented relates to the fears and concerns expressed in Humbach (supra) of the complications and delays that would ensue if every health insurer who made a payment to a plaintiff were entitled to intervene in the injured party’s litigation.
Initially I would observe that a health insurer could avoid the present problem by providing in its contracts that any medical payment made by it is a lien on any payment (whether it be for medical expenses or otherwise) subsequently received by the insured in tort litigation relating to the injury. CPLR 4545 excludes collateral source payments that are liens from the provisions thereof and the decisions in Teichman (supra) and Humbach (supra) appear to indicate that there would not be anything improper in contractually creating such a lien. Further, as indicated in Winkelmann (supra), the claim of Oxford is independent and thus can be brought as a separate action. However, individual trials of the two claims based on the same incident would not be consonant with the goals of judicial economy.
I believe that the proper resolution of the issue is to permit intervention (either under CPLR 1012 or 1013) but to limit the participation of the intervenor’s counsel, whether pursuing the claim in the name of the insured (as authorized by CPLR 1004) or in the name of the insurer.
Under certain circumstances a party may be represented by more than one counsel and “conflicts, if any, which may arise by virtue of the representation of the plaintiff by more than one attorney of record should be resolved by the trial court during the course of the litigation” (Chemprene, Inc. v X-Tyal Intl. Corp., 55 NY2d 900, 901 [1982]). When more than one attorney is representing a party “the trial court should be assured that the strategy pursued by joint counsel will afford fair representation to each party in whatever capacity” (Rosenzweig v Blinshteyn, 149 AD2d 280, 285 [2d Dept 1989]), and *591 “[s]hould collusion become manifest as the trial develops, the trial court remains free to enlarge the participation” of the counsel whose role had been restricted (Kallivokas v Athanasatos, 151 AD2d 396, 398 [1st Dept 1989]).
Thus, while I am granting Oxford’s motion to intervene, so long as the claim for medical expenses for which Oxford seeks reimbursement is asserted and plaintiffs’ counsel diligently pursues such claim, Oxford’s counsel shall not be authorized to participate in the pretrial phase of the litigation, although entitled to receive all notices to which a party is entitled. Should Oxford believe that its interests are not being appropriately represented by plaintiffs’ counsel, it may apply to the court for further authority. At trial, Oxford’s participation shall be at the discretion of the Trial Judge. In accordance with the Teichman decision (supra), no settlement that affects the claim for medical expense reimbursement may be made without the consent of Oxford. Since from the papers I cannot determine whether the claim for medical expenses is being made by plaintiffs, the application to file the proposed intervention complaint is granted.