OPINION OF THE COURT
Edward D. Carni, J.
Defendants and third-party plaintiffs Federal Express Corporation and Michael E Smyth bring this motion seeking an order of summary judgment pursuant to CPLR 3212 dismissing plaintiff Excellus Health Plan, Inc.’s complaint in its entirety as a matter of law.
Factual Background
Excellus is a corporation formed pursuant to the Not-For-Profit Corporation Law and is licensed under article 43 of the Insurance Law. It does business as HMO-CNY, the HMO of BlueCross BlueShield of Central New York.
Federal Express is a foreign corporation organized and existing under the laws of the State of Delaware and provides post and package delivery service in New York State.
On July 20, 2001, Brian L. Beaumont was operating a 1996 Honda motorcycle which was involved in a motor vehicle accident with one of defendant Federal Express’s delivery trucks at the intersection of New York State Route 31 and Connors Road in the Town of Van Burén, County of Onondaga. Defendant Michael E Smyth was the operator of the Federal Express vehicle in the course of his employment for Federal Express.
Brian Beaumont sustained severe personal injuries in that motor vehicle accident and required substantial health care and medical services thereafter.
Prior to Beaumont’s accident, Excellus had issued a group contract for HMO medical care coverage (hereinafter the HMO contract) to Beaumont’s employer and Beaumont was at all relevant times an eligible member under the HMO contract. By the terms of the HMO contract, Excellus provided coverage to Beaumont for certain medically necessary hospitalization and health care services. The cost of the benefits provided to Beaumont and paid for by Excellus presently exceeds the sum of $100,000.
On or about July 30, 2001, Beaumont commenced a civil action against defendants Smyth and Federal Express (see, Beaumont v Smyth, Sup Ct, Onondaga County, Index No. 2001- *729 4917) seeking to recover monetary damages for the personal injuries he sustained. There is no factual dispute that Beaumont, within the personal injury action, is not seeking and has not advanced a claim for the recovery of past or future medical expenses.
The HMO contract contains subrogation language that provides in pertinent part as follows:
“in the event that you suffer an injury or illness for which another party may be responsible, such as someone injuring you in an accident, and we pay benefits as a result of that injury or illness, we will be subrogated and succeed to the right of recovery against the party responsible for your illness or injury to the extent of benefits we have paid.”[1]
On or about April 17, 2003, Excellus commenced this action against the defendants and advanced one cause of action, which alleged standing as subrogee of Beaumont under the applicable HMO contract language and sought recovery of the cost of benefits paid to Beaumont on the ground that defendants’ negligence was the proximate cause of Beaumont’s personal injuries and the medical expenses incurred thereby.
Defendants commenced a third-party action against the Town of Van Burén seeking contribution or indemnity. The Town of Van Burén has taken no position in reference to the issues presented by this motion and has not submitted any papers to the court relative to this motion.
Legal Issues Presented
Excellus and defendants both have taken the position that there are no material issues of fact that would preclude the granting of summary judgment and that defendants’ summary judgment motion presents a pure issue of law for the court to determine. Neither side has advanced an argument that the motion is premature or must await the completion of discovery.
Defendants’ primary argument in support of their summary judgment motion is founded upon CPLR 4545, admissibility of *730 collateral source of payment. This evidentiary statute provides that in a personal injury action wherein the plaintiff seeks and recovers compensatory damages for medical expenses, the court must reduce the award for certain categories of damages, including the cost of medical care, where it is determined that the cost of such expense will, with reasonable certainty, be replaced or reimbursed by any collateral source.[2] The statute provides a list of “collateral sources” which includes “insurance” such as that provided under the HMO contract involved herein.
Defendants argue that Excellus, as a subrogee, has no greater rights than that possessed by its insured, Beaumont. According to defendants, since Beaumont would have no right of recovery against the alleged tortfeasors (Smyth and Federal Express), Excellus could have no greater right against the tortfeasors and may not recover under a subrogation theory that would be barred to Beaumont under CPLR 4545. Defendants also argue that Excellus is subject to whatever defenses the alleged tortfeasors could assert against Beaumont.
Excellus argues that CPLR 4545 does not abrogate or apply to a health insurer’s subrogation claim. According to Excellus, the collateral source rule serves only to prevent a double recovery by a personal injury plaintiff and the real issue is whether the health insurer stands to obtain a double recovery through its subrogation claim, which is not the case here.
Current State of the Decisional Law
It appears to the court that no other court has confronted and decided a collateral source subrogation dispute under the same facts as presented herein. However, there are a number of cases which have addressed similar claims in differing factual settings.
In Kelly v Seager (163 AD2d 877, 877 [4th Dept 1990]), the Appellate Division, Fourth Department, held:
“The collateral source rule set forth in CPLR 4545 (c) does not apply to subrogation actions seeking to recover moneys paid by an insurer on a fire loss. The purpose of the statutory collateral source rule is to prevent multiple recoveries for the same loss by an injured party (see generally, 5 Weinstein-KornMiller, NY Civ Prac 1Í 4545.01). That purpose would *731 not be served by its application to subrogation claims. Subrogation itself ‘exists to prevent double recovery by the insured and to force the wrongdoer to bear the ultimate costs’ (Scinta v Kazmierczak, 59 AD2d 313, 316). Where, as here, the insurer has indemnified its insureds for their fire loss, the insurer is the real party in interest on the subrogation action (see, Siegel, NY Prac, § 137), and the pertinent issue, for purposes of CPLR 4545 (c), is whether the insurer stands to obtain a multiple recovery. Defendants do not contend that the insurer has, or will, receive moneys from a collateral source, and Supreme Court properly denied summary judgment.”
Defendants seek to distinguish Kelly on the grounds that Kelly is a fire loss case and this is a health insurance case. This court finds this factual distinction to be of no legal significance to the legal issues and principles involved in this determination.
In Teichman v Community Hosp. (87 NY2d 514 [1996]), a health insurance carrier attempted to recoup, out of an infant’s settlement proceeds, past and future medical expenses paid and yet to be paid on behalf of its insured. The Court of Appeals held that the insurer had a right to intervene to permit the insurer to establish its contractual right of reimbursement of any medical expenses actually included in the settlement.[3] Notably, the Court of Appeals in Teichman, while discussing the difference between an insurer’s attempts to recover expenses paid under lien, subrogation or contract theories, stated:
“That an insurer does not have a lien entitling it to proceed directly against a particular fund, however, is not the end of the inquiry. Under subrogation principles, an insurer might, for example, seek to recoup covered medical expenses in an action against a tortfeasor; MetLife asserts no such claim here. Rather, MetLife’s remaining claim rests on its right of reimbursement under the insurance contract.” (Teichman, 87 NY2d at 521-522.)
The subrogation action contemplated by this language in Teichman is precisely the nature of the claim advanced by Ex-cellus herein.
*732 The plaintiff in Teichman sought to prevent the insurer from obtaining reimbursement out of the settlement proceeds by arguing that CPLR 4545 would have required that any amount recovered from the tortfeasor for those expenses would have been “set off’ against the judgment and must therefore have been presumed to have reduced the settlement. In rejecting this argument, the Teichman court held that:
“By its very terms, CPLR 4545 applies to admissibility of evidence at trial and to judgments. The statute is silent as to pretrial settlements. As the Appellate Division noted, nothing in the rules governing settlement of an infant’s claim indicates that such settlements must be reduced by collateral source payments (see, CPLR 1206, 1207, 1208). Parties to the settlement of an infant’s claim may certainly consider whether the infant has received collateral source payments, but CPLR 4545 does not compel the conclusion that medical expenses were necessarily excluded from the settlement.” (Teichman, 87 NY2d at 522-523.)
The Teichman court concluded its analysis with the following: “Thus, the trial court did not abuse its discretion in permitting intervention by MetLife. Allowing MetLife to seek a refund of any medical expense payments included in the settlement both prevents a potential double recovery by plaintiffs and assures that tortfeasors, hot ratepayers, will ultimately bear the expense.” (Teichman, 87 NY2d at 523 [emphasis supplied].)
Defendants rely significantly upon Humbach v Goldstein (229 AD2d 64 [2d Dept 1997]). In Humbach, the insurer moved to intervene as a coplaintiff in its insured’s personal injury action. The insurer had paid, on behalf of the plaintiff insured, $83,000 in medical expense costs. The insurer, in seeking to intervene, advanced a subrogation right as against “responsible third parties” and a contractual “right of reimbursement” from the insured to the extent the insured received moneys “through a third party settlement or satisfied judgment . . . specifically identified as amounts paid for health care services or benefits.” (Humbach, supra at 65-66.)
Humbach comported with the generally accepted principles that the rights of an insurer as equitable subrogee against a third party are derivative and limited to such rights as the insured “would have had against such third party for its default or wrongdoing” (Ocean Acc. & Guar. Corp. v Hooker Electro *733 chemical Co., 240 NY 37, 47 [1925]) and “[t]hus, the insurer can only recover if the insured could have recovered and its claim as subrogee is subject to whatever defenses the third party might have asserted against its insured” (Federal Ins. Co. v Arthur Andersen & Co., 75 NY2d 366, 372 [1990]).
The Humbach court undertook a careful permissive intervention analysis pursuant to CPLR 1013 as that was the procedural posture in which the case arose. In this regard, the Humbach court was concerned that the intervention of various medical providers could create an adversarial posture between carriers and plaintiffs, and could unduly delay the determination of such actions.
Moreover, the Humbach court raised the specter of intervention by all types of insurance carriers (no-fault, disability, etc.) together with intervention and cross claims by unpaid providers seeking reimbursement from the carriers for services provided to the plaintiff insured. According to the Humbach court, such unrestrained intervention would transform simple personal injury actions into “complicated, unmanageable, multiparty litigation” (Humbach, 229 AD2d at 68). Concern for confusion and prejudicing the plaintiffs case by submitting multiple collateral source and reimbursement issues to the jury was also present in the Humbach decision (Humbach, supra at 68).
Lastly, the Humbach court found that since the insurer could only seek reimbursement from third-party settlement payments “specifically identified” as payment for health care services, in the absence of a settlement, the insurer’s causes of action were “asserted prematurely.” (Humbach, supra at 68.)
The Humbach court denied the insurer’s motion for permissive intervention under CPLR 1013 while noting that the plaintiff had acknowledged that the insurer had a lien on any payments from third parties which were specifically identified as amounts paid for health care services or benefits attributable to the plaintiffs injuries in the accident. According to the Humbach court, the insurer “could protect any rights it might have by seeking legal redress at that juncture.” (Humbach, supra at 69.)
In addressing the CPLR 4545 (c) issue, the Humbach court found that the purpose of CPLR 4545
“is not only to prevent double recovery by plaintiffs, but also to keep down the liability insurance costs of policyholders . . . The question of whether the defendants’ liability insurance carriers should be *734 held ultimately responsible for all of the plaintiffs damages, even for damages specified in CPLR 4545 which have been compensated from collateral sources, is a question best left to the Legislature, and not to the courts.” (Humbach, 229 AD2d at 67-68).[4]
The Humbach decision does not appear to recognize any significance to the Teichman court’s earlier public policy pronouncement that “tortfeasors, not ratepayers, [should] ultimately bear the expense.” (Teichman, supra at 523.)
In applying Humbach to the instant case, it is clear that there are a number of factual and procedural distinctions. Unlike Humbach, this case does not involve an attempt by the insurer to intervene in the insured plaintiffs personal injury action. The threat of unrestrained intervention leading to complex, unmanageable, multiparty litigation is simply not present here.[5] Moreover, there is no dispute in this action that the injured plaintiff insured is not seeking medical expenses in his action and he has pledged his cooperation with the insurer’s advancement of its subrogation rights in this case. Here, the insured plaintiff does not stand to have his personal injury action prejudiced or delayed in any manner by this separate subrogation action.
Lastly, and quite significantly, in Humbach, the insurance policy language only provided for recovery of medical costs from the insured member’s third-party settlements or satisfied judgments where such settlement or satisfied judgment specifically identified amounts paid for health care services or benefits and only to the extent of the care provided for such injury or sickness (Humbach, supra at 65-66).[6] Therefore, the Humbach court found the insurer’s third-party settlement claim to be premature because there was no settlement yet.
*735 This case, however, involves an attempt by the insurer to directly enforce its subrogation rights against the alleged tortfeasor to recover amounts paid to the insured and, because of the manner in which the insured’s personal injury action has been pleaded and prosecuted, there simply is no possibility of the tortfeasor having to pay twice and no need to await settlement.
No analysis of the interplay between CPLR 4545 and the subrogation rights advanced by Excellus herein would be complete without a consideration of the available legislative history involved in the enactment of CPLR 4545.
Defendants provide the court with a letter dated July 23, 1984 from the Superintendent of Insurance to the Counsel for the Governor regarding the proposed amendments to the CPLR repealing section 4010 and enacting a new section 4545 with more expansive collateral source provisions. Defendants cite to specific language in this letter which provides as follows: “Finally, we believe that reduction of recoveries by collateral sources would have some effect upon the subrogation rights of insurers, and the effective date provision which affects existing occurrences would, therefore, impair existing rights, raising constitutional questions.”
In response, Excellus submits a letter dated July 10, 1985 from the New York State Insurance Department (Chief, Health & Life Policy Bureau) which discusses the Department’s approval of subrogation language in group accident and health contracts like that at issue here.[7] This letter provides in pertinent part as follows: “Our position on subrogation provisions is based upon a determination that such a provision is appropriate in group contracts to eliminate duplicative payments.”
Again, the focus and emphasis by those evaluating subrogation provisions and CPLR 4545 issues seem to be upon the necessity to put in place a regulatory scheme to prevent double recovery by the injured plaintiff insured and, to a lesser degree, the question of who should bear the cost of paying once for the injured plaintiffs medical costs. Indeed, the Court of Appeals, in discussing the purpose of CPLR 4545 in another context, stated: “CPLR 4545 was intended to eliminate double recoveries, not provide defendants and their insurers with an ‘undeserved windfall’ ” (Bryant v New York City Health & Hosps. Corp., 93 NY2d 592, 607 [1999]).
*736 With this in mind, this court turns to the question of whether the application of CPLR 4545 as advanced by defendants herein would result in an “undeserved windfall” to the defendants. Clearly, in the absence of the Excellus medical insurance coverage, which paid the insured plaintiffs medical bills, defendants would be exposed to the potential liability for all of those costs in the insured plaintiffs direct action against the defendants. Obviously, Beaumont’s counsel made a tactical decision not to include a claim for these costs in the insured plaintiffs personal injury action because of the prohibition against double recoveries embodied in CPLR 4545.
However, in the absence of such insurance, assuming the insured plaintiff was successful in prosecuting a claim for past and future medical expenses in the personal injury action without apportionment of liability to the insured plaintiff, defendants would be responsible for every dime of those costs (see, PJI3d 2:285 [2003] [Damages — Personal Injury — Expenses Incurred]). There can be no double recovery to the insured plaintiff here. Why then isn’t avoidance of responsibility for the insured’s medical costs, because of the application of CPLR 4545 advanced by defendants, an “undeserved windfall” to the defendants and their insurance carriers? Isn’t the goal of avoidance of an “undeserved windfall” to defendants and their insurance carriers harmonious with the Court of Appeals’ public policy pronouncement in Teichman that “tortfeasors, not ratepayers, will ultimately bear the expense”? (87 NY2d at 523.)
At least one federal court has analyzed and applied New York law to a similar claim by a defendant that CPLR 4545 bars subrogation claims by insurers to recover the cost of benefits paid to insureds resulting from the defendant’s wrongful conduct (see, Blue Cross & Blue Shield of N.J., Inc. v Philip Morris, Inc., 113 F Supp 2d 345 [ED NY 2000]). In Blue Cross, defendant tobacco company sought to prevent the plaintiff health insurer from asserting subrogation claims in an attempt to recover benefits paid to its insureds for medical costs arising out of the use of defendant’s tobacco products. Like the defendants herein, the Blue Cross defendant argued that the collateral source rule prevented the insurer from recovering anything more than what the insured could have recovered from the defendant in a direct action.
In rejecting the defendant’s argument, the Blue Cross court cited Kelly v Seager (163 AD2d 877, 877 [4th Dept 1990] [“purpose (of CPLR 4545 [c]) would not be served by its ap *737 plication to subrogation claims”]) and criticized the Humbach decision as follows (at 380):
“To the extent that Humbach can be understood as limiting the ability of insurance providers to recover medical costs in equitable subrogation actions, it is inconsistent with the general body of law on equitable subrogation. See, e.g., Berry v. St. Peter’s Hosp. of the City of Albany, 173 Misc.2d 214, 660 N.Y.S.2d 795, 801 (N.Y.Sup.Ct.1997), aff’d in part and rev’d in part by 250 A.D.2d 63, 678 N.Y.S.2d 674 (3d Dept.1998); see also Teichman v. Community Hosp. of Western Suffolk, 640 N.Y.S.2d at 476-77, 663 N.E.2d 628; Nossoughi v. Federated Dept. Stores, Inc., 175 Misc.2d 585, 669 N.Y.S.2d 479, 481-82 (N.Y.Sup.Ct.1998).”[8]
The Blue Cross court also relied upon Judge Lehner’s reasoning and conclusion in Nossoughi (decided after Humbach) which provided as follows:
“Since the princip[al] purpose of CPLR 4545 was to modify the common-law collateral source rule so as to prohibit a double recovery, permitting the health insurer to recover [in equitable subrogation] its out-of-pocket expenses from the tortfeasor’s insurer [or the tortfeasor] does not violate such intent as the claims of the subrogee are separate and distinct from those of the subrogor, being ‘divisible and independent’ ” (Nossoughi, 175 Misc 2d at 589, quoting Winkelmann v Excelsior Ins. Co., 85 NY2d 577, 582 [1995]).
Winkelmann stands for the proposition that an insurer who has fully satisfied its policy obligations to its insured may pursue its subrogation claim against the third-party tortfeasor before its insured has done so (Winkelmann, 85 NY2d at 582).
Defendants also argue that the procedural pathway chosen by Excellus has the potential to result in “inconsistent verdicts” or *738 multiple judgments against defendants for the same items of damage. This court finds little merit in this argument. Initially, there is only one claim for medical expenses being advanced against defendants and that is in this action. Beaumont is not advancing such a claim in his personal injury action and there will be no verdict or judgment awarding medical expenses to Beaumont in the personal injury action. Secondly, to the extent that one action results in a finding of liability as against defendants before the other action is reduced to verdict or judgment, traditional principles of res judicata and collateral estoppel, if applicable, will come into play to resolve or harmonize the two actions.
In conclusion, this court finds, as a matter of law, that CPLR 4545 is not a bar to Excellus’s contractual subrogation action against defendants to the extent that such action alleges that defendants are the responsible parties and seeks to recover the cost of medical expenses paid by Excellus on behalf of its insured, Brian Beaumont.
Accordingly, defendants’ motion for summary judgment is denied in its entirety. Counsel for Excellus to submit proposed order on notice.

. This language represents one of three methodologies the court has identified in the reported cases utilized by insurers to recoup payments made to insureds when a tortfeasor is involved in bringing about the need for medical care. The other two being the inclusion of a contract based “lien” upon any settlement or judgment and a contractual “right of reimbursement” from the insured’s recovery of any settlement or judgment. The methodology at issue herein differs significantly in that it provides for a direct and separate action by the insurer against the third-party tortfeasor rather than a remedy as against the insured.

. This is an item of compensatory damages available to Beaumont which would be subject to the collateral source rule. However, as noted earlier, Beaumont has not advanced a claim for any medical expenses.

. Teichman also determined that the insurer did not have a lien against the settlement proceeds. Here, Excellus does not advance any claim that it has a lien against any settlement or judgment proceeds.

. Humbach refers to and relies upon Teichman (87 NY2d 514 [1996]) for the proposition that CPLR 4545 does not apply to “pretrial settlements.” However, Humbach’s analysis of the public policy for CPLR 4545 does not harmonize with Teichman’s pronouncement that “tortfeasors, not ratepayers” should bear the expense of health care costs arising from negligently caused personal injuries. (87 NY2d at 523.) Humbach’s analysis seems to favor liability policy ratepayers over health care policy ratepayers.

. Humbach recognized that a different procedural posture than that presented by intervention could eliminate these concerns (Humbach, 229 AD2d at 68).

. Because the policy in Humbach did not provide for contract based subrogation versus third parties, the Humbach court analyzed the insurer’s subrogation cause of action under equitable subrogation principles.

. There is no dispute herein that the applicable policy language has been approved by the Insurance Department.

. It should be noted that the Third Department, in reversing, in part, Berry v St. Peter’s Hosp. (173 Misc 2d 214 [1997], supra), agreed with the Second Department in Humbach that intervention by health insurance carriers could impermissibly allow insurers to dictate the course of the insured’s litigation *(Berry, 250 AD2d 63, 68-69 [1998]). Of course, that intervention issue is not present in the procedural posture of this action. Moreover, the Third Department recognized (250 AD2d at 69 n 6) that its determination was inconsistent with the Fourth Department in Kelly (163 AD2d 877 [1990], supra) and the Supreme Court, New York County, in Nossoughi (175 Misc 2d 585 [1998], supra).