*579
 
 OPINION OF THE COURT
 

 Simons, J.
 

 The narrow issue presented is whether an insurer who has paid its insured the full amount due under a fire policy, but less than the insured’s loss, may proceed against the third-party tortfeasor responsible for the loss before the insured has been made whole by the tortfeasor. We conclude that it may and thus affirm the order of the Appellate Division.
 

 Plaintiffs Herbert and Victoria Winkelmann own a building in Verplank, New York, insured by defendant Excelsior Insurance Company. In July of 1990, the building was severely damaged by a fire allegedly caused by the negligence of James Hockins, a worker engaged in repairing its roof. The parties agree that plaintiffs’ damages total $319,359.26, $296,329.26 representing damages to the building and $23,030 representing lost income. After subtracting the deductible, depreciation and reductions for coinsurance, defendant paid plaintiffs $221,882, a sum which included damages for the building and for $13,603 lost income. The payment fully satisfied defendant’s obligation under the policy.
 

 Subsequently, plaintiffs and defendant sought recovery from Hockins and his insurer, Colonial Indemnity Insurance Company. Plaintiffs claimed Hockins owed them $97,477.26 while defendant sought to recoup the $221,882 it had paid plaintiffs under the policy. By a letter dated March 25, 1991, Colonial advised plaintiffs’ representative that it would offer no more than $188,103 in settlement of all claims. According to Colonial, that sum included $178,603 for Excelsior in satisfaction
 
 *580
 
 of its subrogation claim and $9,500 for plaintiffs for their uncompensated lost income. Colonial subsequently paid Excelsior $180,000 and, on April 10, 1991, Excelsior released its claims against Hockins and Colonial. Upon receipt of the funds, Excelsior paid plaintiffs their pro rata share of the $250 deductible.
 

 Plaintiffs failed to reach agreement with Colonial, and on May 1, 1991 they commenced legal action against Hockins. The following August they instituted this action against Excelsior for $97,477.26, alleging that Excelsior acted in derogation of their rights by settling its subrogation claim with Colonial before plaintiffs had been made whole. They claim that their ability to obtain payment from Hockins or Colonial —i.e., their bargaining position — was diminished by the fact that Colonial had already paid $180,000 on Excelsior’s claim, thus making it difficult for plaintiffs to settle their claim. They contend that because prejudice to insureds inevitably results in such circumstances, insurers must be precluded as a matter of law from settling with tortfeasors (or their insurers) until the insureds’ claims for outstanding uninsured losses are resolved.
 

 Both parties moved for summary judgment. Supreme Court denied plaintiffs’ motion and granted defendant’s cross motion. The court subsequently dismissed plaintiffs’ separate action against Hockins, concluding that it was barred by the release from Excelsior to Hockins and Colonial. On plaintiffs’ appeal, the Appellate Division affirmed the judgment dismissing the action against Excelsior, noting that "if the prejudice alleged by the plaintiffs does arise, it may be addressed at that time by an appropriate action” (204 AD2d 622, 623). It reversed the judgment in
 
 Winkelmann v Hockins
 
 (204 AD2d 623), holding that plaintiffs had subrogated their rights to Excelsior only to the extent of Excelsior’s payment; inasmuch as plaintiffs’ loss was greater than the indemnity by Excelsior, they could maintain a claim against Hockins for the difference, notwithstanding Excelsior’s release. We granted plaintiff leave to appeal in
 
 Winkelmann v Excelsior.
 
 The action against Hockins remains pending.
 

 The short answer to plaintiffs’ claim against Excelsior, as the Appellate Division noted, is that the action is premature. Plaintiffs may yet recover the balance of their losses in the action against Hockins. There is no evidence that Hockins’ policy with Colonial has been exhausted or that his personal
 
 *581
 
 assets are insufficient to satisfy any additional liability to plaintiffs. Accordingly, Excelsior has not caused its insureds any damages yet. Insofar as plaintiffs allege that Excelsior’s conduct "forced” them to litigate rather than settle their claim against Hockins, that claim, even if true, does not state a cause of action against Excelsior for impairing plaintiffs’ rights.
 

 Subrogation is the principle by which an insurer, having paid losses of its insured, is placed in the position of its insured so that it may recover from the third party legally responsible for the loss
 
 (see,
 
 16 Couch, Insurance 2d § 61:1 [rev ed]; 23 NY Jur 2d, Contribution, Indemnity and Subrogation, §3).
 
 *
 
 The principle has a dual objective. It seeks, first, to prevent the insured from recovering twice for one harm, as it might if it could recover from both the insurer and from a third person who caused the harm, and, second, to require the party who has caused the damage to reimburse the insurer for the payment the insurer has made (16 Couch,
 
 op. cit.,
 
 § 61:18, at 93). The doctrine is liberally applied for the protection of those who are its natural beneficiaries — insurers that have been compelled by contract to pay the loss caused by the negligence of another
 
 (Ocean Acc. & Guar. Corp. v Hooker Electrochemical Co.,
 
 240 NY 37, 47;
 
 see, Federal Ins. Co. v Andersen & Co.,
 
 75 NY2d 366, 372; 16 Couch,
 
 op. cit.,
 
 § 61:22). If, however, the sources of recovery ultimately available are inadequate to fully compensate the insured for its losses, then the insurer — who has been paid by the insured to assume the risk of loss — has no right to share in the proceeds of the insured’s recovery from the tortfeasor. Or, to state the rule another way, an insurer has no right of subrogation against its insured when the insured’s actual loss exceeds the amount it has recovered from both the insurer and the wrongdoer (16 Couch,
 
 op. cit.,
 
 § 61:64, at 145-146;
 
 see, e.g., St. Paul Fire & Mar. Ins. Co. v Rose Supply Co.,
 
 19 NC App 302, 198 SE2d 482,
 
 cert denied
 
 284 NC 254, 200 SE2d 655;
 
 see generally,
 
 Rinaldi,
 
 Apportionment of Recovery Between Insured and Insurer in a Subrogation Case,
 
 29 Tort & Ins LJ 803, 807-811
 
 *582
 
 [1994]). The question here is whether these principles preclude an insurer, who has fully satisfied its policy obligations, from pursuing its subrogation claim against the third-party tortfeasor before its insured has done so.
 

 An insurer’s subrogation rights accrue upon payment of the loss
 
 (Federal Ins. Co. v Andersen & Co., supra,
 
 at 372;
 
 see also, Safeguard Ins. Co. v Rosen,
 
 39 AD2d 851,
 
 affd without opn
 
 31 NY2d 1054;
 
 Ocean Acc. & Guar. Corp. v Hooker Electrochemical Co., supra,
 
 at 44;
 
 Gibbs v Hawaiian Eugenia Corp.,
 
 966 F2d 101, 106). At that point, an insurer who has paid the policy limits possesses the derivative and limited rights of the insured and may proceed directly against the negligent third party to recoup the amount paid. This is so even though the insured’s losses are not fully covered by the proceeds of the policy
 
 (Federal Ins. Co. v Andersen & Co., supra,
 
 at 374). The claims of the insurer for amounts paid by it and the insured’s claim for uninsured losses are divisible and independent, and "[permitting the insurer to sue * * * as equitable subrogee does not affect the insured’s right to sue for the amount of the loss remaining unreimbursed”
 
 (id.).
 

 Nevertheless, plaintiffs contend that insurers’ rights as subrogees, like those of sureties, do not arise until the creditor (here, the insured) has been made whole
 
 (see, Hanlon v Union Bank,
 
 247 NY 389;
 
 McGrath v Carnegie Trust Co.,
 
 221 NY 92). Some insurance cases do apply the suretyship analogy
 
 (see, e.g., American Sur. Co. v Gerold,
 
 255 App Div 285), but our recent decision in
 
 Federal Ins. Co. v Andersen & Co. (supra)
 
 renders plaintiffs’ reliance on suretyship principles misplaced in this case.
 

 In
 
 Federal Ins.
 
 we noted that the rights of sureties and insurers must be distinguished because the different obligations they assume justify different rights in subrogation
 
 (Federal Ins. Co. v Andersen & Co., supra,
 
 at 374;
 
 see also,
 
 44 Am Jur 2d, Insurance, § 1795, at 786-787). The obligation assumed by a surety runs to the creditor and subrogation may not in any way defeat the creditor’s rights. The surety provides the creditor with a source of collateral or security for the debt of another, and the "creditor may not be required to surrender any part of his collateral till payment has been made in full”
 
 (McGrath v Carnegie Trust Co., supra,
 
 at 95). Thus, the surety acquires no subrogation rights to pursue the debtor until the creditor is required to release its collateral, i.e., when the creditor is made whole. Any rule permitting the surety to
 
 *583
 
 recover its losses from the defaulting debtor
 
 pro tanto
 
 would interfere with the creditor’s right to be made whole and would vitiate the value of the collateral of the surety.
 

 By contrast, the insurer’s obligation runs to its insured, and then only to the extent of the policy limits. The insured has chosen to purchase a limited amount of insurance, as distinguished from requiring a guaranty of credit, and retains the right to pursue recovery for its outstanding losses. Moreover, the debtor in the insurer/insured dispute is the negligent third party whose ability to meet its obligation has not yet been tested, unlike the defaulting debtor in the surety/creditor dispute. Thus, an insurer’s action based on partial subrogation through its insured will not necessarily interfere with the insured’s right to be made whole by the tortfeasor and, unlike the surety, the insurer need not delay its subrogation claim against the third party to avoid impairing the insured’s rights.
 

 Plaintiffs also rely on several out-of-State cases holding that the insurer’s rights as equitable subrogee do not arise until the insured has been made whole
 
 (see, e.g., Florida Farm Bur. Ins. Co. v Martin,
 
 377 So 2d 827 [Fla];
 
 St. Paul Fire & Mar. Ins. Co. v Rose Supply Co.,
 
 19 NC App 302, 198 SE2d 482,
 
 cert denied
 
 284 NC 254, 200 SE2d 655,
 
 supra; Wimberly v American Cas. Co.,
 
 584 SW2d 200 [Tenn];
 
 Washtenaw Mut. Fire Ins. Co. v Budd,
 
 208 Mich 483, 175 NW 231). Those decisions all deal with the narrow situation (recognized,
 
 ante,
 
 at 581), in which the insurer seeks equitable subrogation
 
 against its own insured
 
 and the proceeds of insurance plus the insured’s recovery from the negligent third party fall short of making the insured whole. The insurer cannot share in proceeds the insured has obtained from a third party in addition to the insurance indemnity when the insured has not been made whole. Only if the insured’s recovery exceeds its loss can the insurer share in the excess proceeds
 
 (see also,
 
 16 Couch,
 
 op. cit,
 
 § 61:64, at 145-146; Rinaldi,
 
 Apportionment of Recovery Between Insured and Insurer in a Subrogation Case,
 
 29 Tort & Ins LJ 803, 807-811). The rule is based upon the nature of the relationship between the insurer and the insured — if the loss of one of the two must go unsatisfied, it should be the insurer who has been paid to assume the risk of loss
 
 (see, St. Paul Fire & Mar. Ins. Co. v Rose Supply Co.,
 
 19 NC App, at 304, 198 SE2d, at 484,
 
 supra; Wimberly v American Cos. Co.,
 
 584 SW2d, at 203,
 
 supra).
 
 The cited decisions do not stand for the proposi
 
 *584
 
 tian, nor has our attention been called to any case which does, that the equitable subrogee must delay seeking recovery from the tortfeasor until the insured has exhausted its efforts to collect from the third-party tortfeasor
 
 (cf., Garrity v Rural Mut. Ins. Co.,
 
 77 Wis 2d 537, 253 NW2d 512).
 

 Finally, plaintiffs contend that as a matter of equity and public policy, the insurer’s right of subrogation should not arise until the insured has been made whole because the inherently unequal bargaining positions of the insurer and insured in negotiations with the third party’s insurer naturally prejudice the insured. We are not persuaded that such inequality exists, or that it requires a different result in this case even if it does. The tortfeasor’s insurer must always proceed with full awareness of its duty to protect its insured from claims regardless of who asserts them. Moreover, in a similar context, we noted the harm that may be suffered by an insurer if its action against the tortfeasor in equitable subrogation is delayed
 
 (see, Krause v American Guar. & Liab. Ins. Co.,
 
 22 NY2d 147, 155). If the insurer is required to forego its rights while the insured delays in asserting its claim against the third party, as plaintiffs did here, the delay may compel the insurer to litigate a stale claim, or worse, may result in its action being time barred
 
 (id.).
 

 The reasons for plaintiffs’ failure to resolve their claims with Hockins’ insurer in this case are not clear but plaintiffs have always had, and now have, a remedy to failed negotiations; they may pursue their claims against Hockins in court, obtain a determination of the amount recoverable and a judgment compelling its payment. Plaintiffs were entitled to postpone their action for damages and attempt to resolve the matter by negotiation if they chose, but Excelsior had no legal obligation to hold its claim against Hockins in abeyance until plaintiffs resolved theirs, nor be answerable for plaintiffs’ remaining loss if plaintiffs were unable to settle with Hockins’ insurer. It will be time enough to determine plaintiffs’ rights vis-á-vis defendant’s when and if it is determined that the third-party tortfeasor is unable to pay the remainder of their loss.
 

 We have reviewed plaintiffs’ remaining claims and find them without merit.
 

 
 *585
 
 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Kaye and Judges Titone, Bellacosa, Smith, Levine and Ciparick concur.
 

 Order affirmed, with costs.
 

 *
 

 Our analysis of plaintiffs’ contentions is founded on the principles of equitable, not contractual, subrogation because plaintiffs’ claims rest on equitable principles, not on rights or limitations arising from a release or assignment given Excelsior by plaintiffs. Indeed, the record submitted to this Court does not contain a copy of the insurance contract or any release executed by plaintiffs upon defendant’s payment of its obligation under the policy.