OPINION OF THE COURT
David R. Demarest, J.
In this medical malpractice action — wherein plaintiff Sally House does not appear to seek recovery for medical expenses paid on her behalf — Excellus Health Plan, Inc. moves for permission to intervene, pursuant to CPLR 1012 and 1013. Ex-cellus argues the relief sought is proper because it has an interest in the matter, it will be bound by the judgment rendered, its interests will not be adequately represented by the parties, and its claims are founded upon questions of law and fact which are common to this action. Plaintiff and defendants oppose the relief, citing conflict of interest between plaintiff and Excellus, litigation delay and complication, and that intervention would violate CPLR 4545. Defendants cite to Berry v St. Peter’s Hosp. of City of Albany (250 AD2d 63 [3d Dept 1998]) in support of their opposition.
In Berry the Third Department reversed the Supreme Court order permitting intervention by permission upon the basis of both prejudice to the substantial rights of plaintiff and potential delay. As to prejudice, the Third Department noted that the intervenor’s presence at any potential settlement discussions would undoubtedly visit prejudice upon plaintiff since the insurance proceeds available to the remaining defendants in that lawsuit were significantly less than those which could be recovered at trial. Characterizing prejudice as being “the overriding reason for our decision to reverse,” the Court went on to explain that if plaintiff were to accept a settlement and “have a good-faith basis for allocating it to an element of damages that does not include medical expenses,” any insurer which was permitted to intervene would now wield “veto power over such a settlement” (at 66-67). This, the Court said, “strikes at the heart of the relationship between insureds and insurers and impermissibly allows the latter to dictate the course of litigation.” (Id. at 68-69.)
The facts in Berry also included a history of bitter dispute between the insurers (two) and the insured’s wife over the reasonableness of medical costs incurred for her insured husband, a 15-year coma patient with irreparable brain damage, at St. *529 Peter’s Hospital with around-the-clock nursing care, sustained by a respirator and feeding tube. The Court noted that since the wife had commenced a federal action seeking to compel the two insurers to pay for her comatose husband’s private-duty nursing services, these costs would, no doubt, prove to be a hotly contested issue. Litigation delay and complexity weighed against permitting the insurers’ intervention motions.
The Court, in Berry, analyzed the insured-insurer relationship, noting the insurer is paid to assume the risk of loss and, thus must bear the loss if the insured’s recovery does not exceed its loss. Citing to Humbach v Goldstein (229 AD2d 64, 68 [2d Dept 1997]), the Third Department agreed that to permit intervention “could create an adversarial posture between carriers and plaintiffs,” stating that “public interest in assuring the integrity of relations between insurers and their insureds requires that even the potential for conflict of interest in these situations be avoided and militates against allowing an insurer to, directly or indirectly, place its own interests above those of its insured.” (Berry at 67.) The Court went on to note that, for this reason, although the Court of Appeals has permitted an insurer to enforce its subrogation rights against a third-party tortfeasor, considerations of equity will not permit such relief if to do so would diminish the insured’s rights.
Acknowledging its earlier decision in Winkelmann v Excelsior Ins. Co. (85 NY2d 577, 581 [1995]), holding an insurer has an equitable right of subrogation to the extent of benefits paid by it to its insured, the Court of Appeals in Teichman v Community Hosp. of W. Suffolk (87 NY2d 514 [1996]) permitted intervention by an insurer after a settlement was achieved on behalf of an infant. It is important to note that Teichman was a case brought by an insured against its insurer seeking to vacate any reimbursement claims and to declare the insurer had no right to settlement proceeds. Granting relief to the insured would have otherwise foreclosed the insurer from asserting its rights. Basing its decision on the insurer’s right of reimbursement under the insurance contract, it noted the policy’s language which authorized the insurer’s recovery of a refund from its insured for all expenses the insured received from another source. It is important to note that intervention in Teichman was permitted to determine whether the settlement included compensation for medical expenses. To be sure, the Court of Appeals (at 523) stated, “[t]he trial court itself noted that ‘the settlement amount herein is inextricably intertwined with *530 components of pain and suffering and medical expenses’ ” and found that “there exists the possibility that the settlement did actually include some payment for medical expenses.”
In Humbach v Goldstein (229 AD2d 64 [1997]), the Second Department upheld the trial court’s decision denying intervention to an insurer at a preverdict stage. The contract causes of action were held to be premature insofar as the policy’s language permitted the insurer to recover the reasonable value of the insured’s care or sickness upon the insured’s receipt of payment by virtue of third-party settlements or satisfied judgments which were identified “as amounts paid for health care services or benefits and only to the extent of the care provided for such injury or sickness” (at 66). Clearly, without either benefit of a settlement or a satisfied judgment paid to the insured, the insurer’s contractual rights could not yet be exercised, relegating the insurer to principles of equitable subrogation.
That Court noted that since an equitable subrogee’s rights are derivative to that of its insured’s rights, the insurer (as subrogee) is subject to any defenses the third-party tortfeasor may assert against its insured. On this subject, the Court stated that although the Court of Appeals in Teichman (supra) noted CPLR 4545 did not apply to pretrial settlements, the Court of Appeals had not yet spoken to the effect of CPLR 4545 on such subrogation issues at the preverdict stage. Relying on legislative history which included arguments it would prevent plaintiffs double recovery and keep policyholder’s costs down for liability insurance, the Second Department held that “[t]he question of whether the defendants’ liability insurance carriers should be held ultimately responsible for all of the plaintiff’s damages, even for damages specified in CPLR 4545 which have been compensated from collateral sources, is a question best left to the Legislature.” (Humbach at 68.)
In Humbach, the Second Department determined both prejudice and delay militated against permitting intervention. It found that to permit intervention of every insurance carrier (health, disability and no-fault) and unpaid, but insured medical service providers would complicate “[s]imple personal injury actions . . . transforming] [them] into complicated, unmanageable, multiparty litigation” (id.). Prejudice would be further visited upon a plaintiff by submitting issues of collateral source compensation to the jury, “permitting the jury to speculate that the plaintiff already has been compensated, so the ‘case should not be seriously regarded.’ ” (Humbach at 68, quoting Posnick v *531 Crystal, 181 App Div 660, 662 [1st Dept 1918].) It is important to note that the plaintiff in Humbach acknowledged the existence of the insurer’s “lien” on any third-party payments identified as medical expenses.
In Kaiser v Metropolitan Tr. Auth. (171 Misc 2d 273 [Sup Ct, Suffolk County 1996]), the insurer made two applications to intervene: at the commencement of trial immediately following jury selection; and following plaintiffs settlement during trial of the liability issue. The first application was denied, with permission being granted to make a second application to intervene upon the damages trial of the matter if a liability verdict for plaintiff resulted. During trial, the case settled and the insurer made application to intervene. The settlement provided for the exchange of a “substantial sum of money” (at 275) in exchange for a general release. As placed upon the record, the sum was to compensate plaintiff for pain and suffering only. It went on to expressly state that no sum paid was to compensate plaintiff for either past or future collateral source expenditures, and that plaintiff would indemnify and hold defendant harmless against any lien and, more particularly with regard to plaintiffs insurer, that insurer’s lien or subrogation right.
The trial court noted that since CPLR 4545 bars mention of plaintiff’s reimbursed expenses, granting intervention to an insurer to present evidence of a plaintiffs medical expenses to the jury would be improper. For this reason the insurer would be permitted intervention only for the purpose of a hearing outside the presence of the jury as to its right to exercise subrogation. This relief would engender two trials — one with a jury and one without a jury — within the context of the same lawsuit. If permitted to intervene, the court held that the only role the insurer would be permitted at trial would be with regard to posttrial medical expenses.
Since the settlement specifically excluded medical expense compensation, the trial court held the insurer’s “claim and/or subrogation rights . . . were acknowledged and preserved, thereby negating any argument that Oxford’s subrogation rights were impeded, impaired or extinguished by the actions of the parties and the language of the stipulation.” (Kaiser at 276.) On this subject, the court went on to hold that if the insurer wants to pursue its subrogation rights against its insured, both the insurer and insured are entitled to avail themselves of the rights afforded litigants in the CPLR, inclusive of discovery devices. *532 Holding that medical expense compensation was not part of the settlement and that the insurer’s equitable subrogation rights were preserved, no basis exists for intervention and the insurer may “prosecute its rights of equitable subrogation by separate action” (at 277).
In the case at bar, plaintiff’s complaint refers to “further medical bills” as a consequence of defendants’ medical malpractice/negligence in performing hip replacement surgery. Her bill of particulars itemizes “some of [her] out-of-pocket expenses . . . $6,578.26,” stating “Defendants may obtain charges incurred from all health care providers by use of authorizations provided [herewith],” and responding that “certain of [her] medical bills were reimbursed and/or paid by [Excellus] . . . $9,157.97 through July 17, 2007.” While it would not appear plaintiffs pleadings seek recovery for the medical bills paid by Excellus, her bill of particulars provides a response to defendants’ requests for those expenses. The purpose of a bill of particulars is to amplify the pleadings, limit proof and prevent surprise at trial. (Graves v County of Albany, 278 AD2d 578 [3d Dept 2000].)
Plaintiffs health insurance policy provides for subrogation at paragraph 13:
“13. Subrogation In the event that [plaintiff] suffers] an injury or illness for which another party may be responsible, such as someone injuring you in an accident, and [Excellus] pay[s] benefits as a result of that injury or illness, [Excellus] will be subrogated and succeed to the right of recovery against the party responsible for [plaintiffs] illness or injury to the extent of the benefits [Excellus has] paid.”
The policy, at paragraph 13, goes on to define the insured’s duty to cooperate with Excellus, as insurer:
“Duty to Cooperate with [Excellus] — Possible Penalties for Failure to Cooperate. Under certain circumstances, [Excellus is] also entitled to be reimbursed for the benefits [Excellus has] paid from a settlement or a judgment [plaintiff receives] from the party responsible for [plaintiffs] illness or injury. This and other penalties which apply under certain circumstances are noted below. Those circumstances are:
“A. The settlement or judgment you receive from *533 the party responsible for [plaintiffs] illness or injury specifically identifies or allocates monetary sums directly attributable to expenses for which [Excellus has] paid benefits; or
“B. [Plaintiff fails] to cooperate with [Excellus] in proceeding against the party responsible for [plaintiffs] illness or injury to recover the benefits [Excellus has] paid. [Excellus] will pay all expenses associated with a legal action[ ] instituted on [Excellus’] initiative.
“The penalty for failing to cooperate under subparagraph ‘B’ above is that [plaintiff] will be responsible to repay to [Excellus] the amount of the benefits [Excellus has] paid. [Excellus agrees] to invoke Subparagraph B’ only when [plaintiffs] illness or injury caused by a third party results in [Execllus’] expenditure on [plaintiffs] behalf of an amount exceeding $500 under this coverage. In any of these provisions where [Excellus] must give [its] prior written consent, [Excellus agrees] not to unreasonably withhold [its] prior consent and [Excellus agrees] to waive all penalties under these provisions if [Excellus does] not give or withhold [its] prior consent within 30 days from the date [plaintiff or plaintiffs] legal representative seeks prior consent in writing from [Excellus].”
Based upon this contractual language and asserting equitable subrogation rights, Excellus seeks permission to intervene since upon review of plaintiffs pleadings and bill of particulars “[she] does not intend to seek reimbursement for any of the expenditures made on her behalf by Excellus.” Plaintiff opposes Excellus’ motion to intervene citing: conflict of interest, improper creation of an adversarial relationship between plaintiff and Ex-cellus, delay, prejudice, and that the provisions of CPLR 4545 foreclose subrogation rights in the absence of a settlement (citing Berry, Humbach and Kaiser).
Plaintiff’s opposition to Excellus’ motion raises neither important factor discussed in Berry: defendants’ inadequate insurance coverage or any particular issue with regard to the reasonableness of plaintiffs medical expenses. Without these factors, the specific adversarial concerns raised in Humbach which were discussed in Berry don’t apply in this lawsuit. However, since Excellus’ motion is made in the context of ongoing litigation — as opposed to postsettlement — Humbach’s discussion of whether CPLR 4545 applies to preverdict equit *534 able subrogation issues is instructive on the issues of prejudice and delay. Notably, although the Humbach court held CPLR 4545 applies to preverdict scenarios and thus denied intervention, the plaintiff in Humbach acknowledged existence of the insurer’s lien with regard to identified medical expenses. In stark contrast, plaintiffs pleadings fail to mention past medical expenses and, presumably, upon this basis, her opposition avoids discussion of any lien or subrogation rights. Were the court to lay this distinction aside and follow the Humbach court’s rationale that CPLR 4545 applies to preverdict intervention scenarios, denial of Excellus’ motion to intervene on equitable subrogation principles does not foreclose Excellus from exercising its contractual subrogation rights.
The Excellus policy provides it with a contractual right of subrogation, requiring plaintiff to cooperate with it in seeking recompense for benefits paid out. Notwithstanding the present posture of the pleadings, plaintiff has yet to secure either a settlement or judgment from defendants. For this reason, a cause of action premised upon subparagraph “A” of the contract is premature, requiring denial of intervention on this basis. Regardless, it would appear Excellus’ rights are preserved for future litigation under subparagraph “B” of the “subrogation” provision. In the event plaintiff fails to cooperate with Excellus in proceeding against defendants to recover the benefits paid out, the contractual penalty “is that [plaintiff] will be responsible to repay [Excellus] the amounts of the benefits [Excellus has] paid.” Thus, once Excellus’ request for plaintiffs cooperation is met with defiance (i.e., plaintiff chooses not to pursue past medical expenses at trial or fails to seek any necessary pleading amendment), Excellus may prosecute its rights of contractual subrogation by separate action. Likewise, separate actions for equitable subrogation have been held proper. (See Kaiser at 277, citing Winkelmann.) Excellus’ motion to intervene is denied.